NO. 07-05-0223-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

APRIL 5, 2007
_____

IN THE INTEREST OF N.W.S., M.K.S. AND W.R.S., CHILDREN
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 90-531,435; HONORABLE DAVID GLEASON, JUDGE[1]
_____

Before QUINN, C.J., and CAMPBELL, J., and BOYD, S.J.[2]

**MEMORANDUM OPINION**

Chester Wayne Sullivan appeals an order holding him in contempt for failure to pay child support and denial of his motion seeking credit for excess payments. We affirm.

The marriage of Chester and Nancy Sullivan was terminated by a 1993 divorce decree. That decree required Chester to pay $500 per month as support for the three children of the marriage. A May 1998 modification order increased Chester's monthly

_____

[1] Sitting by assignment.

[2] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

support obligation to $565 and directed Nancy to obtain medical insurance coverage for each child.  It also provided:

> As additional support, the Court ORDERS [Chester] to pay one-half of the medical insurance premiums paid by [Nancy] on behalf of the children.  The Court finds that at the time of this hearing one-half of the medical insurance premium for the children is $126.13 per month. Said monthly payments shall be made at the same time and in the same manner as the regular child support payments and shall begin on January 1, 1998, and shall continue for as long as any child receives medical insurance coverage through [Nancy].

The order directed Nancy to inform Chester "of any changes in the children's medical insurance premium within ten days of the change" and provided that Chester "shall begin paying the modified amount of medical insurance premium reimbursement on the first day of the month following receipt of notification of the change."

At the time of the 1998 order Nancy worked for Mitchell County.  It is undisputed she left that job in November or December 1998 and the children's medical insurance through that employer ended.  Nancy worked for four other employers through the final hearing in this action.  At that hearing she asserted she provided medical insurance for the children through each employer but she did not notify Chester of any changes in the medical insurance premiums.  Chester continued to pay the same amount for medical insurance through June 2002.  That month he reduced his support payments to the base amount due for the one child remaining under 18.  Two income tax refunds with a total value of $4,824 were garnished and applied to Chester's child support obligations.

In May 2004 Chester filed a motion seeking a determination that he was entitled to credit for overpayment of support and a declaration he was not obligated to reimburse

2

Nancy for medical insurance. The motion alleged Nancy had not paid any medical insurance premiums for the children since January 1999. Chester sought credit against his current support obligations for medical insurance support payments he made since January 1999 and the garnished income tax refunds. In November 2004 Nancy moved for enforcement of the 1998 support order. She requested the past due support be reduced to judgment, that Chester be held in contempt, fined and incarcerated until he complied with the support order, and requested an increase in his support obligation.

Both motions were heard at an April 2005 hearing where the parties and their attorneys were the only witnesses. Chester presented Nancy's deposition testimony that, with the exception of her last employer, she had obtained medical insurance for the children after leaving Mitchell County but she did not recall the amounts of the medical insurance premiums. Nancy admitted she could not remember the medical insurance premiums paid through other employers but her recollection was that the amount increased every year and she decided to pay the increases rather than seek additional reimbursement from Chester.

The trial court signed an order holding Chester in contempt, increasing his support obligation, and shifting to him the burden to obtain medical insurance for the youngest child, and denied the relief requested in his motion. Chester now challenges the trial court's rejection of his position that he was not obligated to make medical insurance payments after December 1998 and he was entitled to credit for the payments made. Chester's first twelve issues each rest on the trial court's determination he had a continuing obligation to reimburse Nancy for one half the cost of medical insurance for the children,

3

in the amount set out in the May 1998 order.  His final issue asserts entitlement to a new trial because of an incomplete record on appeal.  We initially address this issue.

Chester argues he is entitled to a new trial because exhibits introduced at the hearing were not included in the reporter's record and cannot be located.  Citing *Rogers v. Rogers*, 561 S.W.2d 172 (Tex. 1978), *Victory v. Hamilton*, 127 Tex. 203, 91 S.W.2d 697 (1936), and *CarStar Collision v. Mercury Finance* 23 S.W.3d 368 (Tex.App.–Houston [1st Dist.] 1999, pet. denied), he contends this defect prevents him from challenging the sufficiency of the evidence on appeal and constitutes reversible error.

Rule of Appellate Procedure 34.6(f) provides an appellant is entitled to a new trial if four conditions are met: (1) the appellant must timely request a reporter's record, (2) a "significant exhibit or a significant portion of the court reporter's notes and records have been lost or destroyed," (3) the lost or destroyed portion of the record is necessary to resolution of the appeal, and (4) it cannot be replaced by agreement of the parties or, in the case of an exhibit, with a copy determined by the trial court to accurately duplicate the original.  Appellant's brief does not address any of these requirements for entitlement to a new trial.

The clerk's record contains appellant's request for preparation of the reporter's record.  The reporter's record supports the description of the missing exhibits in appellee's brief.  The first two were notices from the IRS that appellant's tax refunds had been

4

garnished. The fact and amounts of the garnishments were shown in the testimony.[3] Four additional tax documents were introduced. Two were K-1 statements for trusts of which appellant was a beneficiary and two were appellant's tax returns. The documents were introduced to show appellant's resources and are not relevant to appellee's payment of medical insurance premiums. The final exhibit was a COBRA medical insurance coverage statement. The amount of that bill also was revealed in the testimony. Nothing in the record supports a conclusion the documents are necessary to the appeal or appellant was unable to obtain replacement copies or obtain an agreement to substitute copies for the lost documents. The appellants in *Rogers*, *Victory* and *CarStar* were deprived of any reporter's record on appeal. Appellant has not met the requirements of Rule 34.6(f) and we overrule his thirteenth issue.

All of appellant's remaining issues arise from the trial court's rejection of his view that he was not obligated to pay half the cost of medical insurance for the children after December 1998. He does not contend, as alleged in his original motion, that Nancy did not pay for any medical insurance coverage for the children after December 1998. He now argues her failure to notify him of changes in the children's medical insurance premiums as required by the 1998 order terminated his medical insurance obligation under that order. The trial court properly rejected appellant's reading of the 1998 order.

---

[3] Those amounts were reflected also in the financial activity reports from the Child Support Division of the Attorney General's Office, copies of which were appended to Nancy's pleadings. The same information is appended to appellant's brief on appeal.

Under appellant's reading of the order, Nancy's obligation to notify him of changes in the medical insurance premium was a condition precedent to his liability for half the cost of medical insurance. That view is contrary to the plain language of the 1998 order. Appellant's liability under that order was conditioned only on Nancy obtaining medical insurance for the children and payment of premiums. The event terminating appellant's liability for half the cost of medical insurance was set out with equal clarity; the obligation "shall continue for as long as any child receives medical insurance coverage through [Nancy.]"[4]

Appellee's failure to notify appellant of changes in medical insurance premiums did not prevent him from establishing he had paid more than half the amount appellee paid for the children's medical insurance. As the movant on that issue he bore the burden to establish that fact. *See London v. London*, 192 S.W.3d 6, 15 (Tex.App.–Houston [14th Dist.] 2005, pet. denied) (motion to modify), *In re T.J.L.*, 97 S.W.3d 257, 268 (Tex.App.–Houston [14th Dist.] 2002, no pet.) (motion to enforce support order). He presented no evidence establishing he had paid more than one half the medical insurance premiums paid by appellee. To the degree of a conflict between appellee's testimony the premiums had increased, and evidence she had paid $55.83 each two weeks for some unspecified period, it was within the province of the trial court to resolve that conflict. *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 395 (Tex.App.–Amarillo 2000, no pet.).

---

[4] This phrase must also be read in conjunction with the provision ordering appellee to maintain medical insurance "so long as child support is payable for that child."

The evidence is legally and factually sufficient to support the trial court's determination appellant was obligated to pay $126.13 per month as additional child support from January 1, 1998 through April 1, 2002 and that he failed to do so. We overrule appellant's issues 1, 2, 3, 4, 5, 7, 8, 9, and 10.

The evidence is legally and factually sufficient to support the trial court's finding of an arrearage of $2,476.42 and grant of a judgment in that amount. The account activity report from the Attorney General's Office on which the trial court relied affirmatively showed he was given credit for the tax refunds obtained through garnishment. We overrule appellant's issues 6, 11, and 12.

Finding no merit in any of appellant's issues, we affirm the order of the trial court.

James T. Campbell
Justice